## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**WINFRED CAMPBELL (#161377)**                                    **CIVIL ACTION**

**VERSUS**

**NATHAN BURL CAIN, ET AL.**                                    **NO. 14-0694-JWD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.   Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 11, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

WINFRED CAMPBELL (#161377)                         CIVIL ACTION

VERSUS

NATHAN BURL CAIN, ET AL.                           NO. 14-0694-JWD-EWD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the court is the defendants' Motion to Dismiss (R. Doc. 12).   This motion is not opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against former Warden Burl Cain and Legal Programs Director Trish Foster, complaining that monies have been misappropriated from his prison account, that CDs and DVDs were stolen or confiscated from him in 2012, that his access to the courts was obstructed when he was not allowed to "add new fact [sic] to support [his] post-conviction," thus interfering with a collateral attack upon his conviction, and that he has been retaliated against for "exercising [his] right[s]," through the alleged tampering with his legal mail and through placement in a "punishment camp."   The plaintiff prays for monetary damages as a result of the defendants' alleged wrongful conduct.

The defendants move to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the plaintiff has failed to state a claim upon which relief may be granted.   In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6).   Specifically,

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950. The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges that on an unspecified date he complained to the

inmate banking office that money was missing from his inmate account.   The plaintiff alleges that he then filed an administrative grievance with defendant Warden Cain's office that was answered by defendant Trish Foster.   The plaintiff alleges that his grievance was thereafter denied at the second step of the administrative process for the asserted reason that he had not provided evidence to support his claim.   The plaintiff further alleges that more than $1,000 is missing from his account and has been improperly credited to several LSP offender organizations.

The plaintiff next alleges that he received a court order on April 22, 2014, from the Clerk of Court for the United States District Court.   He then wrote to the Legal Programs Department about CDs and DVDs that were allegedly stolen or confiscated from him in 2012.   The plaintiff alleges that, as a result of unspecified action by prison officials, he was unable to add new facts to support his post-conviction relief application and was prevented from asserting a collateral attack on his criminal conviction.

Finally, the plaintiff alleges that he has been retaliated against for the exercise of his First Amendment constitutional rights.   This retaliation has taken the form of (1) tampering with his legal mail by opening, reading and or removing items therefrom, and (2) placement in punitive segregated confinement.

 Initially, the defendants seek dismissal of the plaintiff's claim asserted against them in their official capacities for monetary damages.[1]   In this regard, the defendants are correct that 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against

---

1. It is unclear from the plaintiff's pleadings in which capacity he has sued the defendants. Notwithstanding, the Court interprets the pleadings of *pro se* petitioners liberally.   *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).   Accordingly, the Court will interpret the plaintiff's Complaint as naming the defendants in both their individual and their official capacities.

either a state or its officials acting in their official capacities, specifically because such officials are not seen to be "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).   In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.   *Id.* at 25.   Accordingly, the plaintiff's claim asserted against the defendants in their official capacities for monetary damages is subject to dismissal.   In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state.   *Id.* at 29.

Turning to a consideration of the plaintiff's claims asserted against the defendants in their individual capacities, the Court next agrees with the defendants that the plaintiff is barred from recovering compensatory damages in this case by reason of 42 U.S.C. § 1997e(e).   Pursuant to this statute, a prisoner plaintiff is prohibited from the recovery of compensatory damages for mental or emotional injury in the absence of a showing of physical injury.   The plaintiff has not alleged that he has sustained any physical injury as a result of the defendants' alleged wrongdoing. Accordingly, this aspect of the plaintiff's claim must be rejected.   The plaintiff might still be able to recover nominal or punitive damages, however, upon a showing that the defendants have violated his constitutional rights.   *See Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

The Court next addresses the defendants' assertion that they are entitled to qualified

immunity in connection with the plaintiff's claims. The defendants contend in this regard that the plaintiff has failed to allege facts that support a conclusion that they have participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). The Court considers whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001), should not be "regarded as an inflexible requirement," but may be considered if a court wishes). Courts now have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing*

*Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendant's motion should be granted.   Specifically, the Court concludes that the plaintiff has failed to allege sufficient facts to support a viable constitutional claim against the defendants named herein.

First, the Court will address the defendants' assertion that the plaintiff has failed to allege sufficient personal involvement on their part in the events complained of herein.   In this regard, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed.   *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).   Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.   *See Ashcroft v. Iqbal, supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").   Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.   *Lozano v. Smith, supra*, 718

6

F.2d at 768.

Applying the foregoing standard in connection with the plaintiff's claims, the Court concludes that the defendants' motion is well-taken. Specifically, the plaintiff has failed to allege that either of these defendants has been personally involved in conduct that may be characterized as a violation of the plaintiff's constitutional rights. As the former head warden at LSP (which houses more than 5,000 inmates) and as Director of the LSP Legal Programs Department, defendants Cain and Foster are supervisory employees who are not alleged to have had personal involvement in connection with the plaintiff's monetary accounts, his property storage or retrieval, his mail handling, or his disciplinary proceedings. At best, all that the plaintiff has alleged relative to these defendants is that the plaintiff forwarded an administrative grievance to defendant Cain's office and that defendant Foster was the official who responded to that grievance, apparently denying same. Notwithstanding, the law is clear in this context that a mere failure to investigate or respond correctly to an inmate's written administrative complaints is not a basis for liability under § 1983. To the contrary, there is no constitutional right to an investigation or to a favorable response in reply to an administrative grievance and there is no due process right inherent in such a claim. *Mahogany v. Miller*, 252 Fed. Appx. 593, 595 (5th Cir. 2007). As stated by the United States Court of Appeals for the Fifth Circuit in *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Id*. at 373-74. Accordingly, in the absence of any allegation that defendants Cain or Foster have

had any direct or personal involvement in the events alleged in the plaintiff's Complaint, the plaintiff's claims asserted against these supervisory officials are without legal or factual foundation and should be dismissed.   Nor has the plaintiff alleged or shown in this case that the alleged deprivations of which he complains have occurred as a result of any affirmative wrongful policy implemented by the defendants or any breach of an affirmative duty specially imposed by state law.

Further, in the alternative, a substantive review of the plaintiff's claims would fare no better.  First, with regard to the plaintiff's claim for compensation as a result of the alleged misappropriation of his property (both with regard to moneys allegedly missing from his inmate accounts and CDs and DVDs allegedly stolen or confiscated from him in 2012), not only has the plaintiff failed to allege that defendants Cain and Foster have had any personal involvement in these events, but pursuant to well-established federal jurisprudence, an unauthorized negligent or even intentional wrongful deprivation of property by state employees does not amount to a violation of the procedural requirements of due process if a meaningful post-deprivation remedy for the loss is available.   *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 542 (1981).[2]   The burden is placed on the complainant to allege or show that available post-deprivation remedies are not adequate.   *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984).   In the instant case, the plaintiff has not alleged that state post-deprivation remedies are or were unavailable to him or are or were inadequate.   To the contrary, it is recognized that

---

2.   The underlying rationale of *Parratt* and *Hudson* is that when deprivations of property are effected through either negligent or intentional wrongful conduct on the part of state employees, pre-deprivation procedures are simply "impracticable" since the state cannot know in advance when such deprivations will occur.   *Hudson v. Palmer, supra*, 468 U.S. at 533.

Louisiana law provides ample remedies under which the plaintiff could have proceeded against the defendants for recovery of his property or for reimbursement for its loss.   *Id.* at 763. Accordingly, the plaintiff's claim relative to the alleged loss of his property is without constitutional merit and should be dismissed.

The plaintiff also asserts that unnamed prison officials have interfered with his access to the courts.   Specifically, he alleges that he received an Order from the United States District Court Clerk's Office in April, 2014.   This Order was apparently issued in connection with the plaintiff's pending habeas corpus proceeding in the Western District of Louisiana.   *See Winfred Campbell v. N. Burl Cain*, Civil Action No. 12-2774-EEF-MLH (W.D. La.).   In response, the plaintiff allegedly wrote to the LSP Legal Programs Department about certain "CDs and DVDs" that were allegedly confiscated from him in 2012.   *See* R. Doc. 1 at p. 5.   A liberal interpretation of the plaintiff's confusing allegations suggests that, because of the response or lack of response to that correspondence, he was then "unable to add new fact [sic] to support my post-conviction" claims, and "this also stop me from an collateral attack on my judgement."   *See id.*   Notwithstanding this assertion, the plaintiff apparently concedes that in September, 2014, his "lost property" was returned to him, and "this time it had the missing files from the D.A.'s office that was sent to me back in late 2011."   *See id.*

A substantive right of access to the courts has long been recognized.   *Bounds v. Smith*, 430 U.S. 817, 821 (1977).   Specifically, access to the courts is incorporated into the First Amendment right to petition the government for redress of grievances.   *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979).   In its most obvious and fundamental manifestation, this right protects an inmate's physical access to the courts.   Thus, for example, prison officials may not

block or refuse to transmit, through procedural devices, the transmission of legal documents which prisoners wish to send to the courts.  Nor can they take other actions – such as confiscating or destroying legal papers – that would have a similar effect.  *Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989), *overruled on other grounds, Horton v. California*, 496 U.S. 128 (1990).  The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis v. Casey*, 518 U.S. 343, 356 (1996).  Further, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that has he suffered some cognizable legal prejudice or detriment as a result of the defendants' actions.  *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).  Further, the plaintiff must be able to show that the defendants had an intent to interfere with the plaintiff's right to submit pleadings to the courts or were otherwise deliberately indifferent to the plaintiff's wish to do so.  *See Herrington v. Martin*, 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983").  Finally, an inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights.  *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court" *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Id.*

The plaintiff's access-to-courts claim fails on several fronts.    First, the Court has reviewed the record of the proceedings in the plaintiff's habeas corpus action brought in the Western District of Louisiana.[3]    Such review makes clear that the plaintiff has not been estopped from asserting his claims in that proceeding.    Although the plaintiff apparently submitted a letter to the District Judge in that case in May 2014, the only pertinent assertion in that letter was that he had received correspondence from the Court that was already opened and that he believed his mail was being interfered with after his placement in segregation in connection with an unrelated disciplinary report.    *See* R. Doc. 11 in the Western District proceedings.    The plaintiff also submitted a pleading to the Western District Court in June 2014, wherein he provided additional facts and argument regarding his habeas corpus claims, including an assertion that a cassette tape of his purported statement to police investigators was later "change[d] to a C.D. dis[c] that was 30 minute longer." *See id.* at R. Doc. 12.    The plaintiff made no assertion therein, however, that he was missing the cassette, the CD disc, or any documentary evidence or materials that he needed to present his claims or arguments.    Finally, on July 28, 2014, the plaintiff filed a 14-page Traverse to the State's Response to his habeas claims, providing numerous pertinent case citations and detailed references to the evidence and procedural history of his criminal proceedings.    *See id.* at R. Doc. 16.    There was again no suggestion of any materials that had not been provided to him and no suggestion that he was being hindered in the presentation of his case as a result of actions taken by personnel employed at LSP.    The Western District Court thereafter directed that the

---

3.    A District Court may take judicial notice of the record in prior related proceedings. *Missionary Baptist Foundation of America, Inc. v. Wilson*, 712 F.2d 206, 211 (5th Cir. 1983).    The Court hereby takes judicial notice of the plaintiff's habeas corpus proceedings prosecuted in the Western District of Louisiana.

entire state court record of the plaintiff's criminal proceedings be filed into the record of the habeas proceeding and also directed the attorney for the State to supplement the habeas record with all appeal and post-conviction briefs and rulings.   *See id.* at R. Doc. 18.   Finally, on January 14, 2016, a Magistrate Judge's Report and Recommendation was issued in the plaintiff's habeas corpus proceeding, addressing the plaintiff's substantive contentions.   That Magistrate Judge's Report has not yet been ruled upon by the assigned District Judge.   It appears, therefore, that the plaintiff has not been prevented from pursuing his habeas corpus collateral relief proceedings in the Western District Court and that those proceedings are still pending in that venue.   There is thus no suggestion in the record that the defendants named in this proceedings have interfered with the plaintiff's access to the courts so as to cause him actual cognizable prejudice.

Finally, in addition to the foregoing, the plaintiff has failed to provide anything but a conclusory assertion that he has sustained actual prejudice as a result of the alleged confiscation of his CDs, DVDs or other records.   Specifically, he provides no information whatever regarding what the referenced recordings would show (other than the time differential referenced above), as to whether he contends that his recorded statements were altered when transferred from cassette tape to CD disc, as to what other legal materials may be missing from his property, or as to why he was unable to present his arguments or claims to the habeas court in the absence of the referenced materials.   Nor is there any suggestion that the referenced CDs, DVDs and other materials, if in fact confiscated from him in 2012, were withheld for the very purpose of intentionally interfering with his access to the courts.   The plaintiff concedes that portions of his lost property were returned to him in September 2014, and that the returned property included the "missing files from the D.A.'s office," but he provides no explanation as to why he could not then

12

present his claims to the Western District Court. Thus, this Court finds the plaintiff has failed to plead facts in this case to overcome the defendants' motion to dismiss and to allow the Court to "draw the reasonable inference that the [defendants are] liable for the misconduct alleged." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678.

The plaintiff also make a conclusory assertion that he has been retaliated against as a result of the exercise of his First Amendment rights. In this regard, the taking of action against an inmate in retaliation for the inmate's exercise of his First Amendment constitutional right to seek redress of grievances may amount to a violation of the inmate's constitutional rights. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Id*. at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendants intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendants, and (4) that there is causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). If an inmate is unable to point to the exercise of a specific constitutional right, his claim will fail as a matter of law. *See Tighe v. Wall*, 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra*, 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right").

13

Further, the inmate must provide more than a mere personal belief that he is the victim of retaliation. *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of retaliatory motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

Applying the foregoing standard, it again appears that the plaintiff has failed to allege facts sufficient to state a claim of constitutional dimension relative to any alleged act of retaliation. He does not identify the prison officials who allegedly participated directly in retaliating against him. Further, other than a conclusory allegation that, "when [he] petition[ed] the court" he was retaliated against, he provides no facts that suggest a retaliatory intent on the part of any person, and he provides no chronology of events that allow a plausible inference of retaliation. For example, he does not provide the date that he "petition[ed] the court," the date that pertinent prison officials may have learned of same, or the date of the alleged retaliatory action(s) so as to suggest a connection between the filing of the petition and the retaliatory adverse event. Nor does he allege that any statements were voiced by any person that suggested a retaliatory intent. The entirety of the plaintiff's allegation regarding retaliation is that:

> When I petition the court about this [his missing property] and not being able to have access to the court, no law library time and no legal assistance, prison officials retaliated against me for exercising my right. The prison officials opened, read and removed part of my legal mail.... Now I'm in a punishment camp in retaliation for exercising my 1st Amendment rights.

R. Doc. 1 at p. 5. As such, the plaintiff's allegations amount to no more than a conclusory assertion of his mere personal belief that he was retaliated against. This is not sufficient to state a claim of retaliation sufficient to defeat a motion to dismiss pursuant to Rule 12(b)(6), Fed. R.

Civ. P.[4]   Accordingly, this claim is subject to dismissal as well.

## RECOMMENDATION

It is recommended that the defendants' Motion to Dismiss (R. Doc. 12) be granted, dismissing the plaintiff's claims asserted against the defendants named in this proceeding, with prejudice.[5]

Signed in Baton Rouge, Louisiana, on February 11, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

4.   The Court further notes that the retaliatory adverse actions alleged by the plaintiff are not alone sufficient to establish the viability of his claim.   For example, whereas he complains that "prison officials opened, read and removed part of [his] legal mail," the law is clear that the plaintiff does not have a constitutional right to prevent the opening and review of his legal mail, even out of his presence.   *See Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993); *Singletary v. Stalder*, 273 F.3d 1108 (5th Cir. 2001).   Further, the plaintiff does not identify what, if anything, was removed from his legal mail, and whether or in what manner he may have been prejudiced by the removal.   Further, although the plaintiff complains that he has been confined in a "punishment camp," presumably as a result of an unspecified purported disciplinary violation, the law is clear that the mere issuance of one or more false disciplinary reports and the imposition of resulting punishment, without more, does not amount to a constitutional violation.   *See Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984).   Thus, the plaintiff's allegations do not show that he has either suffered a sufficiently adverse retaliatory act so as to support a claim of retaliation or that there is sufficient causation between the exercise of his constitutional rights and the adverse actions of which he complains.

5.   The Court declines to provide the plaintiff with an opportunity to amend his Complaint to attempt to better allege a cause of action against the defendants.   Not only has he failed to oppose the defendants' motion to dismiss and failed to make any attempt to amend his Complaint to respond to the defendants' contentions, there is no suggestion that he could provide any factual allegations that suggest the personal and direct involvement of former Warden Burl Cain or Legal Programs Director Trish Foster in the events of which he complains.